(No. 41508.—

THE PEOPLE *ex rel.* Frank Martoccio, Petitioner, *vs.* WILLIAM C. ATTEN, Judge, Respondent.

*Opinion filed March 27, 1969.*

HARRY G. FINS, of Chicago, for petitioner.

THOMAS P. SULLIVAN and RICHARD P. GLOVKA, of Chicago, (JENNER & BLOCK, of counsel,) for respondent.

Mr. JUSTICE HOUSE delivered the opinion of the court:

Petitioner was granted leave to file an original petition for *mandamus* against the respondent circuit judge to expunge an order directing a special master in chancery (who has since been appointed a magistrate) to conclude hearings in a pending case.

On May 13, 1963, a cause theretofore filed in 1960 by Robert Faith, Jr., against Frank Martoccio and others, was referred to Gordon Moffett as master in chancery. He heard evidence from time to time until October 11, 1965, on which date plaintiff rested and the defendant moved for a finding in his favor. Moffett filed a preliminary report about 2 months later recommending denial of the motion. He was appointed a magistrate of the circuit court of the Eighteenth Judicial Circuit on June 1, 1966, and was paid by the parties for his services rendered as a master up to that date.

The respondent judge entered the order sought to be expunged on May 10, 1968, over the objections of Martoccio, one of the defendants in the chancery action. No charge of personal bias was made, the sole basis of the objection being that the special master had been appointed a magistrate and could no longer serve after his qualification as a magistrate. The order directed Moffett to proceed to conclude hearings on the case as a special master, not as a magistrate, and ordered that no compensation be paid for duties thereafter performed by him in the case. We granted a motion for leave to file a petition for original *mandamus* by Martoccio.

A major change in our judicial system came into being by the adoption of a revised version of article VI of the

Illinois constitution, effective January 1, 1964. Section 8 of the article eliminated masters in chancery in the following language: "There shall be no masters in chancery or other fee officers in the judicial system." In order to provide for an orderly transition from the old to the new procedure, this abolition was softened by paragraph 8 of the schedule attached to the article, reading: "Notwithstanding the provisions of Section 8 of this Article, masters in chancery and referees in office in any court on the Effective Date of this Article shall be continued as masters in chancery or referees, respectively, until the expiration of their terms, and may thereafter by order of court, wherever justice requires, conclude matters in which testimony has been received." Under this paragraph masters in chancery, including master in chancery Moffett, continued to hold hearings, take proofs and make reports in cases assigned to them prior to January 1, 1964. It was not until Moffett was appointed a magistrate that objections were made to his continuing to serve.

Before proceeding further we think it appropriate to dispose of petitioner's contention that the order of May 10, 1968, was a new reference because acceptance of a magistracy constituted *per se* a resignation as master. A further reason stated was that the order differed from the original reference in that it provided for no compensation while the original provided for payment of fees by the parties. The first reason begs the question and the second is far from "conclusive" evidence that the order was a new reference. The prerequisites to continuation of a master's duties under paragraph 8 of the schedule are that (1) justice require conclusion of the hearing on reference, and (2) that testimony had been taken prior to the effective date of the revised article. The trial court, by its order, in effect, found that both tests had been met. Further, the court's directive that no fees be paid complied with the constitutional prohibition against fee offices.

Section 8 of article VI further provides that: "The General Assembly shall limit or define the matters to be assigned to magistrates." The legislature adopted the Magistrates Act which provides that magistrates devote full time to their judicial duties. (Ill. Rev. Stat. 1967, ch. 37, par. 160.5.) It also adopted an Act to limit or define matters to be assigned to magistrates, (Ill. Rev. Stat. 1967, ch. 37, pars. 621-629,) which superseded paragraph 9 of the schedule. That Act defined the matters assignable to magistrates, but specifically made it subject to rules promulgated by this court. (Par. 621.) It also contained the following prohibition: "Nothing herein contained shall authorize the delegation or assignment to magistrates or others of the function heretofore exercised by masters in chancery or referees, or special commissioners of taking testimony for the purpose of making or reporting findings of fact or of law to a judge for adjudication." Par. 627.

While our Rule 295 (Ill. Rev. Stat. 1967, ch. 110A, par. 295) does not apply to the situation here presented, it substantially increases matters assignable to magistrates who are lawyers beyond those provided by the statute. For example, magistrates may be assigned to hold and approve sales of real estate and execute all appropriate documents in connection therewith, and they may be authorized to hear and decide petitions to sell or mortgage real estate of decedents, minors or incompetents. Our Rules are changing from time to time, including increases in matters assignable to magistrates, in an effort to get maximum use of our judicial manpower.

One of the basic purposes of revised article VI was to make our system more fluid and to lend itself more readily to improvement in the administration of justice. Many problems have arisen in the transition from the old to the new system and they have been solved as they arose within the framework of the revised article with its attached schedule, the statutes and our Rules. As heretofore noted, the sched-

ule recognized the necessity of permitting a master to complete hearings pending on the effective date of the new article. The statutory inhibition against assignment of magistrates to perform functions formerly exercised by masters in chancery was clearly intended to prevent a continuation of the master system in the future, not to interfere with cases in progress. The statute removes any danger of magistrates being used as masters in the future, as is suggested by petitioner.

Apparently petitioner would have the trial court hear the whole matter *de novo,* thus cancelling the hearings heretofore held contained in a transcript of over 250 pages, and requiring re-examination and admission of approximately 200 exhibits. We think the trial judge is to be commended rather than condemned for his action in permitting this master who became a magistrate to complete taking testimony thereby saving the parties' money and the court's time.

The plaintiff in the underlying action filed a petition to intervene as a respondent, which included a motion that the trial judge be dismissed from the action, except as a nominal respondent. He suggests that we adopt a new practice whereby litigants who may be affected by the result of granting leave to file a petition for *mandamus* would be necessary respondents. We are of the opinion that if such a change in procedure were to be made, it should more properly be done by rule rather than case law. The petition to intervene as a respondent, together with the motion, is denied.

The petition for writ of *mandamus* against William C. Atten, the trial judge, is denied.

*Writ denied.*